## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ROANOKE  DIVISION

| | | |
|---|---|---|
| **DOUGLAS JEROME THOMAS, JR.,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 7:22CV00337 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **G. L. WATERMAN, ET AL.,** | ) | JUDGE JAMES P. JONES |
| | ) | |
| Defendants. | ) | |

*Douglas Jerome Thomas, Jr., Pro Se Plaintiff; Nathan H. Schnetzler, FRITH ANDERSON + PEAKE P.C., Roanoke, Virginia, for Defendant Pflieger; Jim H. Guynn, Jr., and Matthew J. Schmitt, GUYNN, WADDELL, CARROLL & LOCKABY, P.C., Salem, Virginia, for Defendants Waterman, Zuidema, Dolan, Rippy, and Joyner.*

The plaintiff, Douglas Jerome Thomas, Jr., a Virginia inmate proceeding pro se, filed this civil rights action under 42 U.S.C. § 1983, alleging various violations of his constitutional rights related to his arrest.  After review of the record, I conclude that the defendants' motions to dismiss must be granted.

### I.

Thomas alleges that on May 26, 2022, Officer G. L. Waterman of the Lynchburg, Virginia Police Department (LPD), pulled Thomas over for allegedly failing to come to a complete stop at a stop sign.[1]  Thomas gave Waterman some

---

[1] In summarizing the facts, I have reviewed all three versions of the Complaint that Thomas has submitted.  However, I consider the one docketed as the Second Amended Complaint, ECF No. 14, to be the operative pleading in the case.

documentation, and the officer walked back to his vehicle.  Shortly, a K-9 unit arrived on the scene, and LPD Officer Rippy and his K-9 conducted a "dog sniff" search of the outside of Thomas's vehicle.  Second Am. Compl. 3, ECF No. 14.  After the search of the car, the officers told Thomas he was being detained and handcuffed him.  During a search of Thomas's person, Waterman "cupped [Thomas's] genitals on both sides" with his hands, while Rippy and LPD Officer C. D. Joyner stood by.  *Id.* at 4.

On June 27, 2022, a preliminary hearing was conducted.  Thomas asserts that Rippy's body camera footage does not show the dog alerting to parts of the vehicle as Rippy had testified.  Waterman testified about pulling Thomas over for failing to stop at a stop sign and that he later called the K-9 unit.  Thomas asserts that the camera footage does not show this sequence of events.  He contends that Waterman "racially profiled" him, saw no traffic violation, and called the K-9 unit even before pulling Thomas over.  *Id*. at 3–4.  Thomas states, "Upon information and belief, Officer G.L. Waterman has been the subject of multiple lawsuits and complaints regarding his conduct during traffic stops," has "been placed on administrative leave before," and "is known for exploiting traffic violations involving African Americans."  *Id.* at 4, 5. Thomas asserts that Lynchburg Mayor Mary Jane Dolan and Chief of Police Ryan Zuidema knew about Waterman's history, but they still allowed Waterman to continue to work for the LPD.  Thomas believes Waterman's

personnel file would show that Black persons make up a greater proportion of those he has arrested during traffic stops than white persons do.

Thomas complains that Commonwealth's Attorney Michael Pflieger viewed the camera footage of the traffic incident and "maliciously continued to seek prosecution" of Thomas. *Id.* at 5. Thomas also asserts that Pflieger withheld some camera footage until after the preliminary hearing "to ensure certification of the charges to the [Lynchburg] Circuit Court." *Id.* No camera footage is currently in the court's record.

Thomas complains that while he was in the Lynchburg Adult Detention Center from March 26 to May 19, 2022, he was assigned to a maximum security area where he was held in his cell for 22 to 29 consecutive hours. After his transfer to the Amherst County Adult Detention Center, staff shortages there also resulted in long lockdowns. Thomas claims these events have caused him emotional and mental distress, anxiety, and depression.

According to court records available online, authorities charged Thomas with multiple criminal offenses stemming from the March 26, 2022, traffic stop. A grand jury returned Indictments on July 5, 2022, charging Thomas with, among other things, possession with intent to distribute a controlled substance; possession of a firearm while in possession of a controlled substance; carrying a concealed weapon; and being a violent felon in possession of a weapon. He faces ongoing criminal

proceedings on these charges, with a jury trial currently scheduled for April 15, 2024.

> Under the heading "Legal Claims," Thomas asserts:
>
> The racial profiling, racial discrimination, sexual assault, false arrest, false imprisonment, culpable and gross negligence, malfeasance, misfeasance, . . . prosecutorial misconduct, and malicious prosecution violated [his] rights and constituted cruel and unusual punishment, due process and equal protection violations, and illegal search and seizure under the Fourth, Fifth, Eighth, and Fourteenth Amendments of the United States Constitution.

*Id*. at 6–7.   As relief, he seeks to have Waterman fired and the other officers reprimanded and to recover compensatory and punitive damages.

Liberally construed, the Second Amended Complaint alleges the following claims: (1) the traffic stop and the drug dog sniff search the LPD officers conducted violated the Fourth Amendment and led to false arrest; (2) Waterman sexually assaulted Thomas during a frisk search, and Rippy and Joyner failed to protect Thomas; (3) Waterman racially profiled Thomas, in violation of the Equal Protection Clause; (4) Mayor Dolan and Police Chief Zuidema knew Waterman posed a risk to African American citizens' constitutional rights, but they allowed him to continue working; (5) Pflieger maliciously prosecuted Thomas knowing video did not support the validity of the stop or the search; (6) Pflieger temporarily withheld certain camera footage; and (7) Thomas was subjected to lengthy time in his jail cell.

Defendant Pflieger has filed a Motion to Dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, and the other defendants (City Defendants) have jointly filed a Motion to Dismiss under Rule 12(b)(6). Thomas has responded to the City Defendants' motion, and his opportunity to respond to Pflieger's motion has expired. Thus, I find both motions to be ripe for consideration.[2]

## II.

A motion to dismiss tests the legal sufficiency of a complaint. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 553-63 (2007). "[T]he complaint must be dismissed if it does not allege enough facts to state a claim to relief that is plausible on its face." *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). In conducting its review, a court must view the facts in the light most favorable to the plaintiff, but "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Id.* In other words, "a pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement."

---

[2] Counsel for the City Defendants has asserted arguments in defense of the City of Lynchburg. However, in the amended versions of the Complaint, Thomas does not identify the city as a defendant. Thus, I conclude that he has abandoned this claim. In any event, he has not alleged facts to support a § 1983 claim against the city. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978) (holding that § 1983 claim against municipality must show that "a policy statement, ordinance, regulation, or decision officially adopted and promulgated" by city officials was a moving force behind the constitutional deprivation at issue).

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).[3]  Section 1983 permits an aggrieved party to file a civil action against a person for actions taken under color of state law that violated his constitutional rights.  *Cooper v. Sheehan*, 735 F.3d 153, 158 (4th Cir. 2013).

## III.

As a preliminary matter, a plaintiff may not recover damages against state officials sued in their official capacities under § 1983.  "[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983."  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).  Thus, to the extent that Thomas has sued the defendants in their official capacities for monetary damages under § 1983, I will dismiss such claims.

## A.

In response to the defendants' arguments, Thomas concedes that he does not have viable claims against the City Defendants under the Fifth Amendment.  Mem. Resp. 2–3, ECF No. 37.  And as discussed herein, absolute immunity bars Thomas's claims for monetary relief against Defendant Pflieger.  Therefore, I will dismiss all Fifth Amendment claims.

---

[3]  I have omitted internal quotation marks, alterations, or citations here and throughout this Opinion, unless otherwise noted.

I will also dismiss Thomas's claims alleging cruel and unusual punishment in jail, in violation of the Eighth Amendment.  To show liability of a constitutional violation in a § 1983 case, the plaintiff must show actions the defendant took to violate his constitutional rights.  *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977).  Thomas does not allege that any of the defendants were involved in the decisions concerning his housing assignments or living conditions while in jail.

## B.

"[I]n initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages under § 1983."  *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976).  More specifically, a prosecutor is absolutely immune for activities performed as part of his role in the judicial process as "an officer of the court."  *Van de Kamp v. Goldstein*, 555 U.S. 335, 342 (2009).

Defendant Pflieger has moved to dismiss on the ground that he is absolutely immune to Thomas's claims against him for damages.  Thomas alleges that Pflieger continued to pursue the prosecution after viewing the video and that he delayed in releasing some video footage to the defense.  Pflieger undertook these activities as part of his role as the state's advocate in the prosecution.  Thus, while Thomas may raise a challenge in the criminal proceedings about Pflieger's handling of the video

footage if warranted, he cannot prevail in a § 1983 claim for monetary damages against this defendant.[4]   Accordingly, I will grant Pflieger's Motion to Dismiss.

C.

"The Fourth Amendment prohibits law enforcement officers from making unreasonable seizures, and seizure of an individual effected without probable cause is unreasonable." *Brooks v. City of Winston-Salem*, 85 F.3d 178, 183 (4th Cir. 1996). Thus, to state a claim for false arrest or imprisonment under § 1983, a plaintiff must demonstrate that he was detained without probable cause. *Sowers v. City of Charlotte*, 659 F. App'x 738, 739 (4th Cir. 2016) (unpublished). Once the plaintiff is indicted for charges stemming from the arrest, however, the question of probable cause for the arrest is settled. *Kaley v. United States*, 571 U.S. 320, 327–28 (2014).

Thus, his Fourth Amendment false arrest claims against the officers and the mayor and police chief have no merit and must be dismissed.

---

[4] Thomas also asserts that Pflieger maliciously prosecuted him. This claim has no basis in fact. A "malicious prosecution claim under § 1983 is properly understood as a Fourth Amendment claim for unreasonable seizure which incorporates certain elements of the common law tort." *Lambert v. Williams*, 223 F.3d 257, 261 (4th Cir. 2000). To state such a claim, a plaintiff must allege that the defendant caused a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and criminal proceedings terminated in plaintiff's favor. *Durham v. Horner*, 690 F.3d 183, 188 (4th Cir. 2012). At a minimum, Thomas cannot meet the third element of this legal standard because the criminal proceedings against him are ongoing.

D.

Thomas asserts that after he was detained and Waterman conducted a frisk search, the officer sexually assaulted him by handling his genitals.

Thomas fails to state any facts suggesting that Waterman's frisk search of his person was conducted as a pretext for the officer's sexual gratification or to humiliate Thomas.  Thomas does not allege that Waterman made any comment suggesting that his actions were prompted by a desire for sexual pleasure or that his actions were more intrusive than necessary to assure the officers that Thomas, now under detention, was not secreting a weapon or contraband on his person.  *Terry v. Ohio*, 392 U.S. 1, 17 n.13 (1968) (describing a routine pat down as involving "the groin and area about the testicles").  Thus, I conclude that Thomas has not stated facts to support any claim that Waterman's search violated his constitutional rights.

E.

Thomas also contends that Joyner and Rippy as bystanders permitted Waterman's alleged assault.  Because I have found that Waterman's frisk search did not violate Thomas's constitutional rights, I also find that his fellow officers cannot be found liable for any violation related to the frisk search.

F.

Police officers can lawfully detain a motorist temporarily if they have probable cause to believe that the driver violated a traffic law, even if the officers

have another motivation to stop that driver.  *Whren v. United States*, 517 U.S. 806, 810 (1996).   In *Whren*, however, the Supreme Court recognized that "the Constitution prohibits selective enforcement of the law based on considerations such as race."  *Id.* at 813.  A selective enforcement, or racial profiling claim arises, if at all, under the Equal Protection Clause of the Fourteenth Amendment.  *Hodge v. Gansler*, 547 F. App'x 209, 210 (4th Cir. 2013) (unpublished).

For Thomas to state a viable equal protection claim that Waterman selected him for a traffic stop for no other reason than his race, Thomas has high hurdles to clear.  *McDaniel v. Jackson*, No. 2:18-CV-01939-RMG-MGB, 2019 WL 7900171, at *6 (Sept. 27, 2019), *R. & R. adopted*, No. 2:18-CV-01939-RMG, 2019 WL 6463788, at *3 (D.S.C. Dec. 2, 2019).

Thomas's Amended Complaint fails to clear these required hurdles to state a viable racial profiling claim.  He does not articulate facts based on his personal knowledge demonstrating that a racially discriminatory intent or purpose was a factor in Waterman's decisions to stop Thomas's vehicle, to call for a dog sniff search, or to arrest him for possession of drugs and other contraband.  Thomas also fails to present facts based on his personal knowledge showing that similarly situated persons who were not African American were *not* stopped or detained under similar circumstances.  For these reasons, I conclude that Thomas has not stated a plausible

equal protection claim related to his allegations that Waterman engaged in racial profiling when conducting the traffic stop at issue.

I also find that Thomas has not stated any plausible claim against any other City Defendant related to racial profiling. Government officials may not be held automatically or vicariously liable for unconstitutional conduct committed by their subordinates. *King v. Riley*, No. 22-6410, 2023 WL 4982353, at *7 (4th Cir. Aug. 4, 2023) (unpublished). Rather, a plaintiff must show how each supervisory official, through his or her own conduct, violated the plaintiff's constitutional rights. *Id.* "And a supervisor's mere knowledge that his subordinates are engaged in unconstitutional conduct is not enough." *Id.*

### G.

In this case, Thomas has not met the required factual burden to state a claim of liability against the supervisory officials he has named. Most importantly, he does not state any claim that Waterman deprived him of constitutional rights related to his race. Second, under such circumstances, Thomas cannot and does not present factual allegations showing that the mayor or the police chief knew that Waterman had engaged in racial profiling of traffic stop suspects in the past or that he presented a continuing and serious risk of discriminating on other traffic suspects because of race. I will dismiss Thomas's racial profiling claims.

H.

Finally, Thomas asserts claims that his beliefs arise from his allegations under state law: "culpable and gross negligence, malfeasance [and] misfeasance."  Am. Compl. 6, ECF No. 14.  Because I conclude that all § 1983 claims must be dismissed, pursuant to 28 U.S.C. § 1367(c), I decline to exercise supplemental jurisdiction over any state law claims that Thomas has asserted.  I will dismiss them without prejudice to his ability to reassert them in a state court case.

IV.

In accordance with the foregoing, it is **ORDERED** that the defendants' motions, ECF Nos. 21 and 32, are GRANTED; the plaintiff's claims are under 28 U.S.C. § 1983 are DISMISSED WITH PREJUDICE; and his state law claims are DISMISSED WITHOUT PREJUDICE, pursuant to 28 U.S.C. § 1367(c).

A separate Judgment will be entered herewith.

ENTER:  August 23, 2023

/s/  JAMES P. JONES
Senior United States District Judge